John REYNOLDS, Appellant,

v.

Michael J. CHARBENEAU, Appellee.

No. 09 87 093 CV.

Court of Appeals of Texas,
Beaumont.

Jan. 21, 1988.

Rehearing Denied Feb. 17, 1988.

John O. Hoyt, Hoyt & Kahn, Humble, for appellant.

Wanda Brown Robertson, Conroe, Bruce W. Cobb, Beaumont, for appellee.

## OPINION

BURGESS, Justice.

On or about February 22, 1985, Debra Davis and John Vandiver were murdered in Montgomery County, Texas. Friends and family of Debra Davis created a trust fund on March 15, 1985, to assist in the investigation of the murders. The trust agreement authorized the trustees to raise funds to be used to pay a reward for information. The trust agreement authorized the trustees to pay the reward fund to such person or persons who furnished "necessary information leading to the identification, apprehension, and conviction of the person or persons" responsible for the murders. The trust agreement also provided that "the information so furnished must be such that without its divulgence, the perpetrator or perpetrators would not be ascertainable from other sources...."

On July 15, 1985, the parents of Debra Davis held a press conference at which they offered a $10,000 reward. The reward offer was reported in the Houston Chronicle on July 16, 1985, as follows:

[T]he parents of Debra Davis have offered a $10,000 reward to anyone who can help solve the baffling murders of their only child and well-known folk singer John Vandiver.

When this reward was publicized, Michael Charbeneau, appellee, was living with John Reynolds, appellant. Charbeneau revealed to Reynolds that his former roommate, Thomas Mathes, had made statements which indicated Mathes and three others were responsible for the murders. Reynolds tried to persuade Charbeneau to report the information to the proper authorities but Charbeneau refused. On August 2, 1985, Reynolds called Houston Crimestoppers and reported that he knew a person who had information relevant to the murders. Charbeneau made contact with Montgomery County Crimestoppers later that day. On the basis of information provided by Charbeneau, Mathes and three others were indicted and convicted for their roles in the Davis–Vandiver murders.

Reynolds later filed this action for declaratory judgment against the trustees of the $10,000 reward fund, and against Charbeneau. Reynolds alleged he was entitled to the $10,000 reward to the exclusion of all others, including Charbeneau.

The trustees answered by general denial and interpleader. By their interpleader the trustees ratified the publication of the reward offer by Debra Davis' parents in the Houston Chronicle. The interpleader acknowledged that both Reynolds and Charbeneau were claiming the reward and stated the following:

[S]hould the Court or jury find that a person or persons accepted that reward offer, then such person or persons as the Court finds accepted the offer and are entitled to the reward funds have a valid contract under the terms of the trust instrument dated March 25, 1985, and the reward funds paid into Court lawfully belong to the person or persons found to be entitled thereto by the Court.

In a non-jury trial on January 16, 1987, Reynolds introduced evidence that Charbeneau would never have come forward and given the information which led to the conviction of the murderers had not Reynolds forced him to do so. When Charbeneau called his first witness, Reynolds objected to the introduction of any evidence that might be offered to prove Charbeneau was entitled to any of the reward money, because Charbeneau had filed no pleading to support recovery.

The trial court then announced that the evidence produced by Reynolds was insufficient to prove he was entitled to the reward. The trial court also announced that since Charbeneau had filed no pleadings supporting his claim to the reward, the money could not be awarded to Charbeneau either. Then the court declared the trial was terminated. On January 23, 1987, Charbeneau filed an amended answer and counterclaim wherein he alleged he was

entitled to the reward. On March 6, 1987, upon motion by Reynolds, the trial court struck Charbeneau's amended answer and counterclaim "without prejudice to the filing of his claim." On the same day the trial court signed a judgment that Reynolds take nothing of the $10,000 reward money. This judgment did not mention whether Reynolds was to recover anything against Charbeneau as a defendant. Neither did it mention whether Charbeneau was to recover any of the reward money.

■ Charbeneau (appellee) argues that the trial court's judgment is not final because it fails to dispose of Charbeneau's claim to the reward, and, therefore, is not appealable. Since this judgment is not intrinsically interlocutory and was rendered after a conventional trial on the merits, and since there was no order entered for separate trial of any issue, we must presume for appellate purposes that the trial court intended to, and did, dispose of all parties and issues made by the pleadings of the parties. *North East Independent School District v. Aldridge*, 400 S.W.2d 893, 897 (Tex.1966). Therefore, we must presume that the trial court struck Charbeneau's counterclaim before signing the judgment, so that there was no counterclaim filed in the case when this judgment was signed. We note that the judgment does not explicitly dispose of Reynolds' claim against Charbeneau. Nonetheless, there being nothing in the record to indicate that any claim against Charbeneau as a defendant was not disposed of, we must presume the trial court intended to and did dispose of such claim. *See Tellez v. Tellez*, 531 S.W.2d 368, 370 (Tex.Civ.App.—El Paso 1975, no writ). In his conclusions of law, the trial court declared that the judgment was intended to deny all relief not expressly granted therein. Furthermore, Reynolds' pleadings name Charbeneau as a defendant but do not state any grounds for relief against him. Neither do these pleadings contain a prayer for any type of relief against Charbeneau. Therefore, we hold that the judgment signed by the trial court is final and appealable.

Reynolds has filed a motion to dismiss Charbeneau's brief on the ground that Charbeneau has no justiciable interest in this cause. Reynolds argues that Charbeneau made no affirmative claim for the reward money until after the trial was terminated, and therefore he has no justiciable interest in this case. This argument fails for two reasons.

■ The first reason is that Reynolds never mentioned any lack of justiciable interest on Charbeneau's part in the trial court. Such an argument may not be raised for the first time on appeal, but must be raised by a written plea in abatement in the trial court. *Texas Industrial Traffic League v. Railroad Commission of Texas*, 633 S.W.2d 821, 823 (Tex.1982). Reynolds argues that since Charbeneau "filed no claim in the trial court," there was no pleading by Charbeneau at which such a plea in abatement could have been aimed. This argument is without merit because Charbeneau did file an amended answer and counterclaim in the trial court, yet Reynolds responded to this pleading by a motion to strike the amended answer and counterclaim without even mentioning any contention that Charbeneau had no justiciable interest in the reward.

■ Second, Reynolds' own testimony established that Charbeneau provided the information which led to the arrest and conviction of those responsible for the murders. His testimony also showed that Charbeneau gave that information to the authorities, at least partly, in reliance on the reward offer. This was enough to establish that Charbeneau had a justiciable interest in the reward money. *Tobin v. McComb*, 156 S.W. 237, 239–40 (Tex.Civ. App.—San Antonio 1913, no writ); *see also Genesee County v. Pailthorpe*, 246 Mich. 356, 224 N.W. 418, 419 (1929). Reynolds' motion to dismiss appellant's brief is denied insofar as it relates to reply points made therein.

■ However, we do find that this court has no jurisdiction to consider Charbeneau's cross-point of error. By his cross-point, Charbeneau urges that the trial erred in terminating the trial. A cross-

point that is not directed to the defense of the judgment against an appellant places the party asserting the cross-point in the role of an appellant. *Miller v. Presswood,* 743 S.W.2d 275 (Tex.App.—Beaumont, 1987, n.w.h.) (not yet reported); *see Young v. Kilroy Oil Co. of Texas,* 673 S.W.2d 236, 242 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Since Charbeneau filed no appeal bond, cash bond, or affidavit in lieu of bond, this court has no jurisdiction to consider this cross-point. See *Miller, supra.*

At the request of Reynolds, the trial court entered findings of fact and conclusions of law. Those findings and conclusions in controversy on this appeal include the following:

## FINDINGS OF FACT

....

6. At no time did Plaintiff JOHN REYNOLDS have direct and immediate information in his possession concerning the identities of those responsible for the Davis–Vandiver murders. Reynolds' claim to the reward fund is based wholly on the fact that he was aware another individual, MICHAEL CHARBENEAU, possessed such information, and on his (Reynold's) encouragement of Charbeneau to come forward and provide the information he (Charbeneau) had to law enforcement authorities. John Reynolds is to be commended for being a good citizen in talking Michael Charbeneau into providing the information, but John Reynolds never gave any information to anyone that would lead to the identification, apprehension and conviction of anyone.

## CONCLUSIONS OF LAW

1. When the reward offer was published in this casee, [sic] it was an offer to individuals possessing certain information relevant to the Davis–Vandiver murders, to make a *unilateral contract,* by performing certain specified acts. Acceptance of the offer made must be unqualified and unconditional, and must be in the exact terms of the offer. In order to comply with the terms of the offer made, it was necessary for Plaintiff JOHN REYNOLDS to show by competent evidence that he provided the first effective information which was the active and efficient means of identification, apprehension and conviction.

2. Plaintiff JOHN REYNOLDS failed to comply with the requirements of the law set out in Conclusion # 1 hereof, and was at all times wholly unable to do so, in that he never possessed information concerning the identities of the individuals responsible for the Davis–Vandiver murders. Reynolds did not comply with the terms of the reward offer which was made and, therefore, never became entitled to receive the reward the subject of this cause. As a result, the Court refused the Plaintiff's request for permanent injunctive relief and for a declaratory judgment that he is entitled to receive the reward the subject of this suit.

3. The Court denied all relief requested in this cause which was not granted in the judgment entered herein.

By his fourth point of error, Reynolds urges that the trial court erred in concluding, "In order to comply with the terms of the offer made, it was necessary for Plaintiff JOHN REYNOLDS to show by competent evidence that he provided the first effective information which was the active and efficient means of identification, apprehension and conviction" in that such conclusion is not supported by any evidence.

■ Charbeneau argues that this conclusion of law is correct because the purpose clause of the trust agreement authorized the trustees to offer the reward to anyone furnishing "necessary information leading to the identification, apprehension and conviction of the person" responsible for the murders "provided the information so furnished must be such that ... the perpetrators would not be ascertainable from other sources." Charbeneau urges that these provisions of the trust agreement were a condition precedent to the terms of the reward offer. We find this argument is without merit because a person need only

comply with the terms of the offer actually made. One need not comply with secret conditions the offeror intended to place upon the offer. *See Kasling v. Morris*, 71 Tex. 584, 9 S.W. 739, 740 (1888).

The record conclusively establishes that the offer actually made was available to "anyone who [could] help solve" the murders. Therefore, the trial court erred in placing restrictions upon the performance necessary to show compliance with the offer. Appellant's fourth point of error is sustained.

■ By his sixth point of error, Reynolds urges that there is no evidence to support conclusion of law number two. Reynolds testified that Charbeneau had refused to report the information he had about the murders to the authorities. He also testified that Charbeneau was planning to move out of state without revealing what he knew. Furthermore, he testified that Charbeneau had refused to reveal what he knew to the authorities even when Reynolds told him of the $10,000 reward.

According to Reynolds' testimony he called Crimestoppers and reported he knew someone who could give information about the murders. The person he spoke to told Reynolds to get that person to contact Crimestoppers. Then Reynolds testified that he told Charbeneau he had already called Crimestoppers and that if Charbeneau did not contact the authorities, "they're going to come get [you]." Then Charbeneau agreed to accompany Reynolds, who made another call to Houston Crimestoppers. Bonnie Montero with Houston Crimestoppers also testified that Reynolds made both of these phone calls. She testified that in the second phone call, Reynolds spoke to her first and then put Charbeneau on the line to talk to her. Montero testified that Charbeneau discussed the reasons he thought Mathes and others committed the murders. Montero then called Detective Renfrow at Montgomery County Crimestoppers. Reynolds testified that he dialed the number of Montgomery County Crimestoppers and Charbeneau talked to Detective Renfrow. Reynolds testified that Charbeneau had refused to come forward with his information because he thought he might be prosecuted since he had apparently known the murders would occur even before the crimes were committed.

The reward in issue was offered to anyone who could "help solve" the murders. We hold that the undisputed testimony of Reynolds and Montero establishes, as a matter of law, that Reynolds did help solve these crimes. Even where a reward is offered for "information leading to arrest and conviction" a person who puts police in contact with a witness who gives such information is entitled to part of the reward money. *See Genesee County*, 224 N.W. at 419. Therefore, Reynolds's sixth point of error is sustained and the judgment of the trial court is reversed.

In light of the disposition, we do not reach appellant's other points of error.

Reynolds asks this court to render judgment in his favor for $10,000 plus interest. In *Tobin v. McComb*, 156 S.W. at 240, the court of appeals held, "When the evidence shows that no one of the claimants fully met the requirements of the offer of reward, but that their efforts combined fully complied with its terms ... they may receive a division of the reward in proportion to their services." We believe this rule is applicable to this case because Reynolds' undisputed testimony established that he only complied with the terms of the reward offer in combination with the actions taken by Charbeneau. We reverse the judgment of the trial court because Reynolds proved conclusively that he is entitled to some of the reward money. However, under the rule announced in *Tobin* and the evidence presented, we remand this cause to the trial court for determination as to what proportion of the reward Reynolds is entitled.

**REVERSED AND REMANDED.**